## SAMUEL RICHARDSON, IMPLEADED, ETC.,

### v.

## JOSEPH O'BRIEN.

*Practice—Demurrer—Pleading Over—Action of Trespass—Damages, Whether Excessive—Pleading—License to be Specially Pleaded.*

1. Where defendant's demurrer to the declaration has been overruled, and he pleads over and joins issue as to the facts, he waives the right to again insist, in this court, upon the grounds of his demurrer.

2. In an action of trespass for the alleged wrongful taking away of household furniture by a person claiming authority under a chattel mortgage, the jury assessed plaintiff's damages at $500, and the furniture did not exceed in value $90; this court holds that the verdict was large, but not so clearly excessive that it would reverse the judgment on that ground alone.

[Opinion filed April 9, 1892.]

APPEAL from the Superior Court of Cook County; the Hon. ELLIOTT ANTHONY, Judge, presiding.

Mr. FRANK H. GOIN, for appellant.

Mr. C. J. MICHELET and SAMUEL B. KING, for appellee.

SHEPARD, J.   On January 22, 1890, the appellee borrowed of the appellant $25, and to secure the repayment thereof he and his wife executed and delivered to appellant their six promissory notes, three for $7 each and three for $6 each, aggregating $39, payable monthly thereafter, together with a chattel mortgage covering all their household furniture, etc., contained in their home in Chicago.   The mortgage contains a covenant providing that in case of default in payment of the notes, or any part thereof, or if the mortgagee shall feel insecure, or fear diminution, he shall thereupon have the right to take immediate possession of the mortgaged goods, and for that purpose may enter upon the premises of the mortgagors and sell the same, etc.   The last note matured on July 23–25, 1890, and only $5 had been paid on account of the whole indebtedness.   On July 24th, Hagedon, an employe of appellant, took the mortgaged goods from the house of appellee to the storehouse of appellant.   The appellant at the time of the taking was in Europe.   The appellee was in St. Louis.   Just how far the appellee's wife, who was at home when the goods were taken, consented to or opposed the taking was a controverted question of fact, and was fairly submitted to the jury upon the evidence, and instructions given by the court on behalf of the appellant—no instructions being asked by appellee.   For this alleged wrongful taking the appellee brought suit in trespass.

The appellant pleaded the mortgage specially as a license, and to this plea the appellee replied that the goods mentioned in the mortgage were necessary household goods.   To this replication a demurrer was interposed and overruled, whereupon appellant took issue upon the replication by a rejoinder denying the truth of the facts therein

set up.  The replication of appellee presented the question of law whether the license contained in the provision already referred to in the mortgage can stand against the statute of 1889, providing that in mortgages thereafter executed no household goods, etc., shall be seized or taken out of the possession of the mortgagor before foreclosure, except by a sheriff upon an order of court.

The court below in overruling the demurrer decided that the statute must prevail as against the contract or license provision embodied in the mortgage, and if the appellant had desired to have that question passed upon by this court he should have abided by his demurrer.  By pleading over and joining issue upon the facts set up in the plea, he waived his right to again in this court insist upon the grounds of his demurrer.  Russell v. Whiteside, 4 Scam. 8; Home Mut. Fire Ins. Co. v. Garfield, 60 Ill. 124; Streeter v. Streeter, 43 Ill. 155 ; Am. Exp. Co. v. Pinckney, 29 Ill. 400.

There was offered and read in evidence by the appellant two papers purporting, respectively, to be signed by Kate O'Brien, the wife of the appellee, by her mark.

One of said papers reads as follows :

"CHICAGO, ILL., July 22, 1890.

To S. RICHARDSON.

*Dear Sir:* Please send and get my furniture mortgaged to you January 22, 1890.  My husband has left and I can not pay you.  Send soon.

KATE x O'BRIEN.
her
mark

Witness : W. HAZLETON."

The other of said papers reads as follows :

"CHICAGO, ILL., July 23, 1890.

This is to certify that I, Mrs. Kate O'Brien, for myself and my husband, Joseph O'Brien, with my own free will and consent, agree to put my household furniture in S. Richardson's warehouse, charges to be for moving same $1.50.   Storage $1.00 per month.

KATE x O'BRIEN.
her
mark

Witness : C. A. WARNER."

There is a sharp conflict in the evidence as to whether Kate O'Brien ever signed the first one of said writings at all, and as to the time (with reference to the taking of the goods out of the house) and the circumstances under which she signed the second one, and taking into consideration all the circumstances surrounding the transaction in connection with the direct testimony of the witnesses, we can not say from the bare record that there is any decided preponderance either way. The jury must have credited appellee with the weight of evidence and there is not enough in the record to justify us in saying the jury were wrong. The appellant did not specially plead either of the writings of July 22d and 23d as a license to commit the acts complained of, and therefore the question is not raised upon this record, as it might have been by special plea and a proper replication below, as to whether those writings, considered together or singly, occupy any better position as licenses for the purpose of evading the statute of .1889, *supra*,.than the license contained in the mortgage itself.

The only purpose that both or either of said writings served in the case, was to show a lack of wantonness in the alleged taking, and we must assume that the jury gave them all the consideration they were entitled to. To have entitled them to operate in discharge, or justification, they should have been specially pleaded. Blanchard v. Burbank, 16 Ill. App. 375, and cases cited. The only serious question arising upon the record is the amount of damages awarded the appellee. The trial seems to have been a perfectly fair one, and no complaint is found with the instructions. According to the evidence in behalf of appellant the actual value of the goods taken was not over $25, while according to appellee's testimony their value was a little less than $90. A verdict of $500 for the taking of goods worth $90 is a large one, and yet we do not consider it such an unreasonable one under all the circumstances of the case, the situation of the parties, etc., as to warrant us in setting it aside. What is the true' limit of compensatory damages is frequently a most difficult thing to determine.

The actual loss to a man temporarily absent from his

home, who returns and finds his house stripped of every vestige of household goods, and his wife and little child cast out, without warrant of law, can not be fairly said to consist in the mere market value of his goods taken away. It has been held that in addition to the property of the plaintiff he was entitled to compensation for any bodily or mental anguish or suffering, for injury to his pride and social position, and for the sense of shame and humiliation at having his wife and family turned out of their home. Mayer v. Gordon, 113 Ind. 282.

While this court would be better satisfied if the verdict had been for a somewhat less sum, as doubtless would also have been the trial judge, still we do not feel that because of that reason alone we ought to subject the parties to another trial. There is nothing else in the record upon which the case can be reversed. The appellant, who appears to have been in Europe when the goods were taken, testifies in answer to questions put to him on cross-examination that he made it his business to investigate the matter thoroughly after he returned home, and that he had no reason to disapprove of the actions of his employe who took the goods; that he was a competent and honest man and did the business right. Stronger ratification and adoption of the acts of his servant could hardly have been expressed.

There does not seem to have been any passion or prejudice upon the part of the jury, and our best conclusion is that the judgment of the court below should be affirmed.

*Judgment affirmed.*