ABRAM RAUMA v. JOHN D. LAMONT and Another.[1]

February 18, 1901.

Nos. 12,438—(183).

**Assault—False Imprisonment.**

In a civil action for an assault and false imprisonment, evidence considered, and *held*, that upon the issues properly submitted to the jury it sustains the verdict against one defendant for assault, and for false imprisonment against both.

**Punitive Damages.**

That the trial court properly submitted to the jury the question whether the plaintiff was entitled to punitive damages, which, under the evidence, was involved as an issue in the case.

[1] Reported in 85 N. W. 236.

Verdicts not Excessive.

> That the verdicts against one of the defendants, for an assault and
> false imprisonment, for $450, and against the other, in aiding and abet-
> ting in the illegal arrest and improper use of force in the false im-
> prisonment, for $350, were not so excessive as to indicate passion and
> prejudice by the jury.

Action in the district court for St. Louis county to recover $500 damages against each of defendants for assault and battery and imprisonment of plaintiff's minor son. The case was tried before Cant, J., and a jury, which rendered a verdict in favor of plaintiff. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendants appealed. Affirmed.

*Fryberger & Johanson,* for appellants.

*John Jenswold, Jr.,* for respondent.

LOVELY, J.

This action was brought by the father of a minor in his son's behalf, under G. S. 1894, § 5164, to recover upon two separate causes of action: First, for an assault and battery; second, for false imprisonment. The action arises out of the facts detailed in the case of Rauma v. Bailey, 80 Minn. 336, 83 N. W. 191. Plaintiff had a verdict against defendants, and from a motion by both for a new trial, which was denied, their appeal brings the evidence, upon a settled case, into this court for review.

To understand the issues accurately, it is necessary to state the facts leading to the assault and arrest of the minor son, John Rauma, which cannot be set forth with greater clearness than is stated in the opinion of Justice BROWN in the case of Rauma v. Bailey, supra, from which it is best to quote:

"Some time in the year 1898, defendant Bailey, as agent of the owner, leased a tract of land to plaintiff upon which to erect or move a building to be occupied as a residence. Plaintiff agreed to pay as rent therefor the sum of one dollar per month. He failed to pay the rent, was some four months in default in December, 1898, and notice to quit was served upon him. He refused to vacate the property, and in March, 1899, Bailey commenced proceedings in forcible entry and detainer against him before a justice of the peace, and recovered judgment for the

restitution of the premises. Plaintiff's name is Abram Rauma, but in such proceedings, in which he did not appear, he was named as Andrew Rome. Subsequently to the entry of such judgment, a writ of restitution directed against Andrew Rome was duly issued, and delivered to defendant Healy, a constable, for service. * * * Healy, accompanied by defendant Lamont, who was acting for Bailey, proceeded to the premises, and forcibly ejected plaintiff therefrom, removing his goods and chattels into the street."

In this action in behalf of the son it appears by the settled case in support of the verdict against defendants that at the time Healy and Lamont arrived at the premises to execute the writ the minor son John was there. His father, who worked nights and slept days, was in bed. The defendant Healy spoke to John at the door, asking if they were going to move, to which he replied that they did not know what they would do. Defendant Healy then went into the house, and commenced to remove the household effects therefrom. He took hold of a water barrel standing near the door. John, standing in the doorway, seized the barrel with both hands, and told Healy not to take it out into the mud, saying that they wanted to get a place first. Healy then took hold of John, forcibly pulled him outside the door, and, after getting him upon the sidewalk, told him to come with him. Healy then pulled out a revolver, and pointed it at John, using some profane language as he did so, holding him by the arm with one hand, while pointing the revolver with the other at his breast. Defendant Lamont was standing by, looking at the proceedings. It does not appear that John assaulted Healy, or made any attempt at personal violence further than interfering with his attempt to seize the water barrel. He knew that Healy was a constable, and that he was there to remove the contents of the building under a claim of right to do so. Afterwards Healy told the boy that he was going to take him to jail, and John went along with him without resistance. Healy then put up his revolver, and, in company with Lamont, each walking on one side of the boy, took him to the jail, a quarter of a mile away. The defendants put the boy in jail, and locked the door. This jail or lockup was a very small room, six by nine feet in dimensions, containing a bed, some hay, and a

quantity of filthy rags. Defendants then returned to the house, and completed their work of removing the contents. After two and one-half hours, defendants released John from confinement. The jury found separate verdicts in favor of plaintiff against Healy for $450 and against Lamont for $350.

While the facts, as thus stated, were contested at the trial, yet we are required, in support of the verdict, to adopt the conclusions above set forth. It will be seen by reference to the case of Rauma v. Bailey, supra, that the suit in the forcible entry and detainer action was commenced and carried on against Andrew Rome, and the writ of restitution was issued against the father in that name. In this action it was left to the jury to determine whether the tenant in possession of the house had appeared in the action, the jury being instructed that, if he had, he was concluded by such appearance, and that the constable was not a trespasser, but that in such case the defendant Healy would be liable for damages if the arrest and imprisonment of plaintiff's son was attended by use of excessive force, or intimidation that was unnecessary or uncalled for under the circumstances, in which case plaintiff would be entitled to recover on account of such unnecessary force and intimidation; and that, if defendant Lamont assisted in the arrest and detention of the son, he would also be liable. The jury were further instructed that, if the injury to John was wantonly, wilfully, or purposely inflicted, they might award compensation for the injury so inflicted, and such "additional amount, called 'punitive' or 'exemplary' damages, as would operate to deter the defendant and others from the commission of a like act in the future."

The assignments of error present two questions: First, upon the instructions of the court to the effect that punitive damages might be awarded; and, second, that the damages were excessive. On both of these contentions we are unable to agree with counsel for appellant. If the writ was void,—which was a question depending upon the determination of the jury as to whether the father appeared in the forcible entry and detainer suit,—the defendant Healy could not be treated as a trespasser; but otherwise, if not protected by the writ, when the son, representing the

father, would be justified in reasonable efforts to prevent their removal, and, if Healy's acts were wanton and malicious, punitive damages might be awarded. So far as the verdict against Healy is concerned, the jury might have found, under the instructions, that he was a trespasser, and his seizure of the boy amounted to an assault; but Lamont took no part in such assault, and the court so instructed the jury. The latter would, however, be liable for the arrest and imprisonment of the boy after he was removed from the building, if he assisted in taking him to jail; and there can be no question but that the instructions of the court that he could have punitive damages, provided such act was malicious and wanton, or characterized by unnecessary force and violence, were correct.

We do not think defendants were prejudiced by the submission of the question of excessive force, unnecessary violence, and intimidation in the arrest of the boy John, even conceding that Healy was not a trespasser. An officer, in the execution of process, has no right to use unnecessary force and violence; and, if he does so, for such wanton act, although he had no particular malice or ill will against the party injured, he is liable. 2 Am. & Eng. Enc. (2d Ed.) 847; Judson v. Reardon, 16 Minn. 387 (431). Conceding that the acts of Healy were justified up to the point of putting the boy out of the house, the question would still be for the jury whether his acts in connection with Lamont in the arrest and imprisonment of the boy were not unnecessary, and did not exhibit an improper degree of force to accomplish his purpose in the service of the writ of restitution. We think there was sufficient evidence in this case of such a wanton disregard of the rights of the boy, considering the slight resistance made by him in taking hold of the water barrel, followed by his easy removal from the house, to show that the officer had no difficulty in executing his writ, which made it unnecessary to intimidate him by the use of a revolver, or to incarcerate him in a filthy jail for two hours and a half. The jury may have found, under the evidence, that such conduct on the part of the officer was characterized by such brutality, coupled with the infamy of arrest and imprison-

ment, as to warrant the conclusion that defendants clearly exceeded the limits of necessity in exercising their duty in that respect; and we think that it was proper to submit this question for their determination.

It remains to be considered whether the damages awarded were excessive. Upon this view of the case, while the damages are somewhat large, we do not think the verdicts were so excessive as to exhibit evidence of passion or prejudice in view of the acts committed by defendants. The claim is made that Healy had a right, as an officer, to arrest the plaintiff, in order to preserve the peace, and to prevent a riot. The evidence does not seem to bear out this claim. At all events, this was a question for the jury. It is not a trivial matter to lock up a citizen in a dirty jail, and keep him in confinement for two hours and a half; and, although the social position of the boy was perhaps not as exalted as that of some other citizens, he was still entitled to the common rights of humanity, and might well feel the indignity and injustice inflicted upon him by being arrested without just reason, and subjected to odious confinement for a considerable space of time in a place provided for common criminals, in the presence of his friends and acquaintances; and we cannot find fault with the jury in expressing their disapproval of such acts, or say their estimate of the damages was so large as to indicate passion or prejudice.

In the case of Judson v. Reardon, supra, plaintiff was unlawfully arrested and locked up for two and a half hours by the order of the chief of police of St. Paul, for which he recovered a verdict of $800. Objection was made that the damages were excessive. The court, in disposing of the case, says that

"They [the jury] might fairly infer that the defendant's sense of public duty was quickened on this occasion by personal feeling. We think, too, that they might well have seen a reckless indifference to plaintiff's feelings, and even to his 'personal rights,' in leaving him thus locked up, * * * which might appear to them to savor of oppression and abuse of power. Nor do we think that imprisonment for that length of time in the dark and filthy cell that this was proved to be can reasonably be said to be a 'nominal detention.'"

The damages given in this action were less than those sustained

in the case last referred to, and, conceding what the evidence tends to prove in support of the verdict, in view of the indignities offered to the plaintiff's son, the public manner of his arrest, the apparent unnecessary grounds therefor, and the shame and disgrace resulting therefrom, we cannot hold that the damages were excessive.

The order appealed from is affirmed.